NOT DESIGNATED FOR PUBLICATION

Nos. 123,252
123,253

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAVINO MARQUAN DANIELS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GERALD KUCKELMAN, judge. Opinion filed January 28, 2022. Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Shawn M. Boyd*, deputy county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., BRUNS and WARNER, JJ.

PER CURIAM: Davino Marquan Daniels timely appeals, arguing the district court abused its discretion by denying his motions to withdraw his pleas and that provisions of the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2020 Supp. 21-6801 et seq., violate his constitutional rights. Daniels pled guilty to one count of aggravated robbery and one count of aggravated assault in 19CR656 and one count of violating the Kansas Offender Registration Act (KORA), K.S.A. 2020 Supp. 22-4901 et seq., in 19CR796. Prior to sentencing, Daniels moved to withdraw his guilty pleas in both cases. Upon our extensive review of the record, we find the district court did not abuse its discretion when

1

it denied Daniels' motions to withdraw his pleas. We further find Daniels' constitutional challenge to the KSGA was not raised before the district court and is an unpreserved claim we decline to address. Therefore, we affirm.

FACTS

Daniels was charged with one count each of aggravated robbery, aggravated assault, criminal possession of a firearm, and possession of stolen property in 19CR656, and three counts of KORA violations in 19CR796. In compliance with his plea agreement, Daniels entered guilty pleas to aggravated robbery and aggravated assault in 19CR656 and, in 19CR796, entered a guilty plea to one count of violating KORA. Daniels, upon signing the plea agreement, acknowledged the following:

> "11. . . . My lawyer has informed me that the plea of 'Guilty' or 'No Contest' could subject me to a maximum punishment, which as provided by law, is 247 months of imprisonment and a fine of $300,000 for the offense.
> . . . .
> "17. . . . I fully understand that the Court is not bound by the terms of this agreement, and may accept or reject said agreement. Further, I understand fully that the court may impose any sentence within the statutory limits and grant or deny probation independently of the agreement between the County Attorney, my attorney, and myself."

The plea agreement also reflected the benefit Daniels would receive upon entering his guilty pleas, with the State agreeing to (1) dismiss the remaining charges in 19CR656 and 19CR796; (2) dismiss all charges in a third case against Daniels; (3) recommend a departure in 19CR656 to 91 months' imprisonment; and (4) recommend the sentence in 19CR796 run concurrent with the sentence in 19CR656.

At Daniels' plea hearing on March 4, 2020, the district court told Daniels, "Now, I want to make sure that you understand this. This is a recommendation that the State and

2

your attorney are going to make to me, but I'm not required to do that. You understand that?" Daniels responded, "Yes, sir." Daniels entered his guilty pleas after the district court explained the rights he would be waiving.

Daniels' sentencing was delayed due to the COVID-19 pandemic. During the delay, the district judge who presided over Daniels' plea hearing retired, and a new judge presided at Daniels' sentencing. On July 31, 2020, Daniels appeared to present his motion to depart and for sentencing. The new judge expressed his concerns with the proposed durational departure sentence in the plea agreement, stating:

> "I know that there's been a change in judges, and perhaps that's done in the past, but I've got to tell you in good conscience I cannot impose a sentence that is less than half of the standard sentence without some kind of a substantial or compelling reason."

Given this insight, Daniels' sentencing hearing was continued to allow Daniels time to file an amended motion to depart more thoroughly outlining his substantial and compelling reasons for his requested durational departure sentence. Daniels took the opportunity to file an amended motion to depart along with motions to withdraw his pleas in both cases. In his motions to withdraw his pleas, Daniels claimed his pleas were not fairly or understandingly made because the parties "reasonably believed" the judge who accepted his pleas would preside at the sentencing hearing and follow the plea agreement recommendations.

At the combined motions and sentencing hearing held September 3, 2020, the district court denied Daniels' motions to withdraw his pleas and rejected his amended motion for a durational departure sentence. The district court, citing the written plea agreements and *State v. Edgar*, 281 Kan. 30, 127 P.3d 986 (2006), found Daniels was represented by competent counsel and his pleas were fairly and understandingly made and did not result from coercion. The district court then proceeded to sentencing and

3

imposed a controlling sentence of 233 months' imprisonment in 19CR656 coupled with a concurrent sentence of 43 months' imprisonment in 19CR796. Additional facts are provided as necessary herein.

ANALYSIS

*Daniels failed to establish good cause to withdraw his pleas.*

Daniels argues the district court's denial of his motions to withdraw his pleas amounts to an abuse of discretion which requires us to reverse. He asserts the district court's good cause analysis was too rigid. The State responds the district court's good cause analysis was correct and supported the district court's denial of Daniels' motions to withdraw his pleas.

*Preservation and standard of review*

Daniels timely filed his presentence motions to withdraw his pleas, and the district court denied them on the merits. The issue is preserved for our review. See *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015) (noting that filing motion to withdraw plea or lodging contemporaneous objection to plea is sufficient to preserve claim on appeal).

A guilty plea can be withdrawn at any time before sentencing if good cause is shown, within the discretion of the court. K.S.A. 2020 Supp. 22-3210(d)(1). We review a district court's decision to deny a presentence motion to withdraw a plea for good cause under an abuse of discretion standard. Abuse of discretion occurs when a judicial action is (1) arbitrary, fanciful, or unreasonable, (2) based on an error of law, or (3) based on an error of fact. When we analyze for abuse of discretion, we do not reweigh evidence or

4

assess witness credibility. The defendant bears the burden of establishing an abuse of discretion. *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018).

*We observe no abuse of discretion.*

As noted above, K.S.A. 2020 Supp. 22-3210(d)(1) provides district courts the discretion to grant a presentence motion to withdraw a guilty plea when good cause is shown. Our good cause standard is not statutorily defined. But district courts typically consider the three *Edgar* factors when analyzing whether good cause has been shown: "(1) whether 'the defendant was represented by competent counsel'; (2) whether 'the defendant was misled, coerced, mistreated, or unfairly taken advantage of'; and (3) whether 'the plea was fairly and understandingly made.'" *DeAnda*, 307 Kan. at 503; *Edgar*, 281 Kan. at 36. But each factor need not apply in the defendant's favor for good cause to be found, and other factors may be considered. Our Supreme Court has instructed "exclusive reliance on or mechanical application of the *Edgar* factors could distort the concept of good cause." *State v. Macias-Medina*, 293 Kan. 833, 837, 268 P.3d 1201 (2012).

Motions to withdraw pleas are governed by different rules depending on whether the motion is presentencing or postsentencing. Defendants seeking to withdraw their guilty pleas *after* sentencing may only do so if the district court finds manifest injustice, analyzing the same three *Edgar* factors from above. See K.S.A. 2020 Supp. 22-3210(d)(2); *State v. Adams*, 311 Kan. 569, 575, 465 P.3d 176 (2020). While manifest injustice is also not statutorily defined, the Kansas Supreme Court has held that "inherent in manifest injustice is that it be 'obviously unfair' or 'shocking to the conscience.' *State v. Kelly*, 291 Kan. 868, 873, 248 P.3d 1282 (2011)." 311 Kan. at 575. Our Supreme Court emphasized that the "presentence 'good cause' standard" for a plea withdrawal is a "'lesser standard'" than the manifest injustice required for postsentence plea withdrawal. *Macias-Medina*, 293 Kan. at 836-37.

5

Daniels asserts his pleas were not fairly and understandingly made and claims good cause exists for him to withdraw his pleas. He also argues the district court should have looked beyond the *Edgar* factors in its good cause analysis to consider Daniels' situation was so "obviously unfair" it satisfied the more stringent manifest injustice standard for withdrawal. The crux of Daniels' argument is centered around his claim he did not fully understand a different district judge could preside at his sentencing hearing and could be opposed to the durational departure sentence recommended in the plea agreement. Given this issue, he claims it cannot be said that the plea was fairly and understandingly made. He further alleges it was "obviously unfair" and the district court should have considered this factor in making its good cause determination.

In Daniels' motions to withdraw his pleas, his counsel acknowledged he advised Daniels that the district judge could decline to follow the sentencing recommendations in the plea agreement, but it was "unlikely to happen, since such an occurrence is almost unprecedented in any court in which counsel has practiced during the past fourteen years." At the hearing on Daniels' motions to withdraw his pleas, Daniels' counsel testified he "advised [Daniels] that the plea recommendations would most likely be adopted." But after the change in judges, counsel discovered his "advice to [Daniels] was not accurate in regards to the relevant circumstances and likely consequences" of the plea agreement, and, therefore, Daniels' plea agreement was not fairly or understandingly made.

At the combined motions and sentencing hearing, the district court walked through the *Edgar* factors and explained its findings for each:

> "First, one: That the defendant was represented by [competent] counsel. I don't think there's been anything to indicate [Daniels' counsel] has been incompetent. . . . There's nothing to indicate that [counsel] was incompetent in the handling of this particular case.

"Number 2: That the defendant was misled, coerced, mistreated, or unfairly taken advantage of. Again, there is nothing before the Court to show that the defendant was misled. The defendant signed the plea agreement, . . . indicating that he understood that there was no guarantee that the Court would follow the plea agreement. There's nothing at all to indicate that he was misled.

"I note that in the certificate of counsel on the last page, [Daniels' counsel] signed that. It says, I have made no predictions or promises to the defendant concerning any sentence. So everything in here indicates to the defendant that there was nothing guaranteed.

"Coerced: There's been no evidence at all that [Daniels] was coerced or mistreated.

"Unfairly taken advantage of: Again, there's simply no evidence that he was unfairly taken advantage of.

"Number 3: The plea was fairly and understandingly made. There's really been no evidence that [Daniels] didn't understand it. As a matter of fact, the findings were that he freely and voluntarily made the plea understanding the consequences. The defendant may have been hopeful of what the sentence would be, but there was nothing promising [Daniels] any particular sentence in this case, and he was advised as to the law.

"No attorney can ever guarantee the outcome in one of these cases. That's not how the system works. The Court is always free to impose an appropriate sentence. And so I can't believe that anybody misled [Daniels] or gave him a wrong impression or understanding. Everything shows to the contrary.

. . . .

"So the Court at this time is going to find that there has been no showing that would rise to the level of good cause."

While the *Edgar* factors establish "'viable benchmarks for judicial discretion,' a court should not ignore other factors that might exist in a particular case." *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016). We have been unable to find in the record where the district court considered the change of judges between Daniels' plea hearing and his sentencing hearing as a separate factor in its good cause analysis. But we have also been unable to find any case where the district court is *required* to consider such an event. District courts are not required to consider factors outside of *Edgar*—they

7

simply *may* consider other factors when making their discretionary decisions about good cause. See *Macias-Medina*, 293 Kan. at 837. So long as the district court's good cause analysis of the *Edgar* factors was not arbitrary or unreasonable and did not involve an error of law or fact, its denial of a motion to withdraw a plea does not constitute an abuse of discretion.

Daniels' signed plea agreement reflects Daniels knew he could be sentenced to prison for a maximum of 247 months in 19CR656 and to 47 months in 19CR796. And the district court was free to accept or reject the terms of the agreement. Neither Daniels' counsel nor the district judge who accepted Daniels' plea promised Daniels his departure motion would be accepted, though his counsel did suggest it would "most likely" be accepted. By signing the plea agreement, Daniels clearly acknowledged he had been advised by his counsel and understood that any promised sentencing recommendations may or may not be followed by the district court. We find this reflects substantial competent evidence to support the district court's finding Daniels' pleas were fairly and understandingly made and were not so "obviously unfair" as to rise to the level of manifest injustice. Whether Daniels' sentencing was carried out by the district judge who accepted Daniels' plea or by another judge, the record clearly shows Daniels' pleas were entered with the understanding he might not receive a durational departure sentence.

We find the district court's good cause analysis was reasonable and involved no error of fact or law. Daniels has not carried his burden to show the district court abused its discretion by denying his motions to withdraw his pleas.

*Daniels' challenge to the KSGA is raised for the first time on appeal and is not preserved.*

At the sentencing hearing, the district court reviewed Daniels' prior convictions and found he had a criminal history score of A for his aggravated robbery conviction in 19CR656 and for his violation of KORA in 19CR796. Criminal history scores can act to

increase the presumptive sentence for a defendant within the KSGA. See K.S.A. 2020 Supp. 21-6804(a). The KSGA allows the district court to determine by a preponderance of the evidence a defendant's criminal history score. K.S.A. 2020 Supp. 21-6814(a).

Daniels argues the KSGA, by granting district courts the power to determine a defendant's criminal history score, violates his constitutional right to a jury trial—both under section 5 of the Kansas Constitution Bill of Rights and under the Sixth and Fourteenth Amendments to the United States Constitution.

But Daniels did not challenge the constitutionality of the KSGA below. Typically, constitutional issues cannot be raised for the first time on appeal. *State v. Williams*, 298 Kan. 1075, 1084, 319 P.3d 528 (2014). Exceptions to this general rule exist, including when the issue involves only questions of law and is finally determinative of the case or when consideration of the issue is necessary to serve the ends of justice or prevent a denial of fundamental rights. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). Daniels alleges both exceptions apply such that his arguments should be heard on appeal.

Even if we were to consider his arguments, the decision to address an unpreserved issue for the first time on appeal is a prudential one, even when one of the exceptions is satisfied. *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020). For this reason, we decline to address Daniels' constitutional challenge to the KSGA. We further recognize his claims have been rejected by our Supreme Court in *State v. Ivory*, 273 Kan. 44, 46-47, 41 P.3d 781 (2002) (KSGA does not violate *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 [2000], or constitutional right to jury trial), and in *State v. Albano*, 313 Kan. 638, 639, 487 P.3d 750 (2021) (KSGA does not violate section 5 of Kansas Constitution Bill of Rights), and we are duty-bound to follow Supreme Court precedent. See *State v Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017).

Affirmed.