NOT DESIGNATED FOR PUBLICATION

No. 127,186

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHAKIR IBRAHIM,
*Appellant*.

MEMORANDUM OPINION

Appeal from Montgomery District Court; REBECCA STEWART, magistrate judge. Submitted without oral argument. Opinion filed January 31, 2025. Affirmed.

*Brandon G. Kinney*, of Kinney and Associates, LLC, of Kansas City, Missouri, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., MALONE and COBLE, JJ.

PER CURIAM: After a bench trial, a district court magistrate judge found Shakir Ibrahim guilty of speeding 65 miles per hour in a 45-mile-per-hour zone. The district court imposed a fine and court costs. Ibrahim appeals, contending the district court improperly admitted radar evidence of his speed. Having reviewed the record, we find no error.

1

On March 3, 2022, Trooper Austin Riley with the Kansas Highway Patrol was conducting a stationary radar check on Highway 169. Around 9 p.m. he observed a semi-tractor trailer traveling at a high rate of speed and engaged his Stalker radar device. Trooper Riley's radar device registered the semi traveling at 66 miles per hour in a 45-mile-per-hour zone. According to Trooper Riley, there were no other vehicles near the semi. Ibrahim was driving the semi.

During the bench trial, Trooper Riley testified regarding the radar device's certification process. The radar device is certified every three years. During the certification process, a trainer verifies the equipment is working properly in the presence of the operator and the trainer also has the operator of the device use it, so the trainer is certain the operator knows how to properly use the radar device. Once certified, the trooper is given a radar device and Lidar permit, which names the trooper as the operator of the device. Trooper Riley's radar's certification was admitted at trial. Per the certification, the radar's variance in speed is 1 mile per hour when stationary and 2 miles per hour when in motion. The radar device's and tuning fork's certification was current, having last been certified on April 30, 2020.

Trooper Riley testified that before and after each shift, he tests his radar, using the tuning forks, to ensure that the radar is operating properly, and it was on the shift during which he stopped Ibrahim for speeding. At the time of the trial, Trooper Riley testified he had this same equipment for four and a half years and has used the radar thousands of times without issue.

Ibrahim's counsel objected to Trooper Riley's testimony regarding rate of speed based on a lack of foundation and hearsay. Initially, counsel objected to the evidence based on lack of foundation. The State withdrew its question to "lay some foundation,"

which it did by eliciting testimony and documents from Trooper Riley regarding his certification to operate the Stalker radar unit and the certification of the Stalker unit itself.

Then Ibrahim's counsel objected based on hearsay and asked to voir dire Trooper Riley, which the judge allowed. After the voir dire, Ibrahim's counsel argued that the documentary certifications were hearsay because Trooper Riley did not personally prepare the certifications, so his personal knowledge of their accuracy was hearsay. The judge overruled this objection, stating that "the officer's demonstrated more than enough firsthand knowledge as to how, when these were created," and admitted the certifications and rate of speed evidence. The certification documents were not included in the record on appeal.

Ibrahim testified, contrary to Trooper Riley, that there was a "very dark" car traveling in front of him. Ibrahim said he was traveling at only 32 miles per hour, not 66 miles per hour, when he was stopped by the trooper. Ibrahim testified he believed the trooper's radar clocked the dark car and not his semi. But Trooper Riley testified that even if there had been another vehicle present, the radar's ability to determine Ibrahim's speed would not have been impacted.

The district court found Ibrahim guilty of speeding 66 miles per hour in a 45-mile-per-hour zone but adjusted the final speed finding to 65 given the trooper's own testimony about potential variance in the radar equipment. The court assessed court costs and a $105 fine, totaling $213.

Ibrahim now timely appeals.

THE DISTRICT COURT DID NOT IMPROPERLY
ADMIT EVIDENCE OF IBRAHIM'S SPEED

On appeal, Ibrahim makes three arguments attacking the admission of the trooper's radar reading. First, he argues there was no foundation to support admission of that evidence. Second, he argues that admission of the radar certification documents was improper because they were hearsay. Third, he argues that failing to call a witness that could substantiate the reliability and factual basis of the certification records deprived him of his right to confront witnesses under the Sixth Amendment to the United States Constitution. Each argument is addressed in turn.

1. *Foundation*

Ibrahim first argues that there was no foundation to support admission of the radar reading as evidence because the person who certified the radar was not present to testify.

Whether there was an adequate evidentiary foundation to admit evidence is a question of fact subject to the district court's discretion. We will not disturb such a decision if substantial competent evidence supports the district court's decision. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 73, 350 P.3d 1071 (2015). Substantial competent evidence "is defined as legal and relevant evidence that a reasonable person might regard as sufficient to support a conclusion." *State v. Rinke*, 313 Kan. 888, 892, 491 P.3d 1260 (2021).

Ibrahim objected to the evidence challenged on appeal before the district court. So, we may review his challenge to the foundation of this evidence on appeal. See K.S.A. 60-404.

"'The proponent of a particular kind of evidence, whether it be a physical object or the testimony of a witness, is required to lay a foundation before it may be admitted into evidence.' 3 Barbara, Kansas Law and Practice, Lawyers Guide to Kansas Evidence, § 1.9, p. 28 (5th ed. 2013)." *Wiles*, 302 Kan. at 74; *State v. Banks*, 306 Kan. 854, 865, 397 P.3d 1195 (2017) (quoting *Wiles* in criminal context). Proper admission of radar evidence requires the State show the following three components of foundation: (1) The radar operator tested the device in accordance with accepted procedures; (2) the radar was functioning properly; and (3) the operator was qualified by training and experience to use the radar device. *State v. Primm*, 4 Kan. App. 2d 314, 315-16, 606 P.2d 112 (1980); *State v. Weber*, No. 126,376, 2024 WL 2795765, at *3 (Kan. App. 2024) (unpublished opinion); *State v. Anderson*, No. 114,447, 2016 WL 3961436, at *4 (Kan. App. 2016) (unpublished opinion).

Here, a sufficient foundation supports admission of the radar evidence. Trooper Riley testified that he tested the radar device before and after his shift by using the tuning forks, that the radar device was functioning properly, and that he had received certification to use the radar and relied on his training when so doing, just as he had when he operated the radar "thousands" of times before. Under these facts, substantial competent evidence supported the district court's finding of a proper evidentiary foundation, and it did not abuse its discretion in admitting this evidence.

2. *Hearsay*

We next address Ibrahim's argument that admission of the radar certification documents was improper because they were hearsay.

Admission of a hearsay statement is reviewed for abuse of discretion. *State v. Evans*, 313 Kan. 972, 983, 492 P.3d 418 (2021). Our consideration of the admissibility of evidence can also require application of statutory rules controlling the admission and

exclusion of certain types of evidence, which is a question of law subject to de novo review. *State v. Miller*, 308 Kan. 1119, 1166-67, 427 P.3d 907 (2018). We also exercise de novo review of a challenge to the adequacy of the legal basis of a district judge's decision on admission or exclusion of evidence. *State v. Brown*, 307 Kan. 641, 644, 413 P.3d 783 (2018).

As discussed above, Ibrahim objected to the evidence challenged on appeal before the district court. So, we may review his challenge to the foundation of this evidence on appeal. See K.S.A. 60-404.

However, Ibrahim has failed to designate these documents in the record on appeal. The party alleging an error occurred has the burden of designating a record that establishes the claimed error. Without such a record, we presume the district court's action was proper. *State v. Liles*, 313 Kan. 772, 783, 490 P.3d 1206 (2021); see also Supreme Court Rule 6.02(a)(4), (a)(5) (2024 Kan. S. Ct. R. at 36) (Appellant has the burden to furnish a sufficient record to support the claims of error; appellant's claims of error must be supported with specific citations to the record on appeal.). Without these documents it is impossible to substantively review Ibrahim's hearsay challenge.

But even if we had the documents and, in the unlikely event we determined they were improperly admitted, there was still sufficient evidence to maintain Ibrahim's speeding conviction without the certification documents. Trooper Riley's testimony established that the radar was certified and properly working at the time it detected Ibrahim was speeding. And Trooper Riley's testimony further established he was personally present when the radar was certified. The papers simply documented that process, but they were not necessary to prove the State's case.

3. *Confrontation Clause*

Finally, Ibrahim argues that failing to call a witness that could substantiate the reliability and factual basis of the certification records deprived him of his right to confront witnesses under the Sixth Amendment.

A review of the record before us reveals that Ibrahim did not raise this issue before the district court. Constitutional grounds for reversal asserted for the first time on appeal are not properly before an appellate court for review. *State v. Holley*, 315 Kan. 512, 524, 509 P.3d 542 (2022). While there are exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, Kansas Supreme Court Rule 6.02(a)(5) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). This rule is strictly enforced. *Holley*, 315 Kan. at 524. Failure to comply with Supreme Court Rule 6.02(a)(5) means the unpreserved issue has been improperly briefed and results in the issue being deemed waived or abandoned. *State v. Godfrey*, 301 Kan. 1041, 1043-44, 350 P.3d 1068 (2015).

Here, Ibrahim has failed to assert any such exception. Accordingly, he has failed to properly brief this issue for appeal. As such, it is deemed waived or abandoned.

In conclusion, we find no error in the district court's actions and Ibrahim's speeding conviction stands.

Affirmed.